IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


SHANNON L. CALLAHAN,

        Plaintiff,

v.                                                              Case No. 3:06cv105/RV/MD

COUNTRYWIDE HOME LOANS, INC.,

        Defendant.
_____/

**ORDER**

      Plaintiff Shannon L. Callahan originally brought this action in the Circuit Court for Escambia County, Florida, against Countrywide Home Loans, Inc., alleging claims of negligence and negligent misrepresentation. The case was removed to this court. The Plaintiff has now filed a motion to remand to state court. (Doc. 8).

**I.**      **FACTUAL BACKGROUND**

      Plaintiff, Shannon L. Callahan, is an active duty Naval officer stationed in Pensacola, Florida. Defendant, Countrywide Home Loans, Inc. ("Countrywide"), is a lending institution incorporated in New York and having its principal place of business in California. In August of 2004, Callahan applied for and received a mortgage from Countrywide for the purchase of property adjacent to Escambia Bay at 8680 Scenic Highway, Unit #3, in Pensacola, Florida ("the property").

      As part of the application process, Countrywide conducted a Standard Flood

Hazard Determination ("flood determination") for the property to determine whether it was in a Special Flood Hazard Area ("flood hazard area"). This flood determination was required by the National Flood Insurance Act ("NFIA") [42 U.S.C. § 4000 et seq.], which prohibits lenders from lending money secured by property in an area designated by the Federal Emergency Management Agency as a flood hazard area unless the lender requires the borrower to obtain flood insurance for the amount of the loan. Countrywide's determination incorrectly concluded that the property was not in a flood hazard area, when, in fact, it was.

Callahan did not purchase flood insurance for the property. In September of 2004, the property sustained significant damage due to hurricane Ivan. Most of the damage was apparently due to the flooding by the hurricane's storm surge. Callahan sought compensation from Countrywide for the damage, and in August of 2005, she sent a demand letter to indicating Countrywide that her claims were in excess of $75,000.

After Countrywide denied Callahan's flood-related damage claims, Callahan initiated this action against Countrywide in the Florida circuit court, alleging claims of negligence and negligent misrepresentation. Callahan's complaint did not specify the amount of damages being sought in the case. Countrywide timely filed a notice of removal, claiming federal question jurisdiction based on the NFIA.[1] The following day, Countrywide received e-mail correspondence from Plaintiff's counsel that included an estimate of damages in excess of $75,000. Countrywide then filed a supplemental notice of removal, claiming additional jurisdiction on diversity grounds. Callahan has now moved to remand the case back to state court.

## II.     DISCUSSION

### A.     Motion to Remand Standard

Any civil case filed in state court may be removed by the defendant to federal

---

[1] Per agreement between the parties, Countrywide's time to file an answer had been extended.

Case No.: 3:06CV105/RV/MD

court if the case could have been brought originally in federal court. See 28 U.S.C. § 1441(a); Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987); B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981). The defendant, as the party removing this action to federal court, has the burden of establishing federal jurisdiction. See Diaz v. Shepard, 85 F.3d 1502, 1505 (11th Cir. 1996). In considering a motion to remand when the plaintiff and defendant disagree on issues of jurisdiction, questions or doubts are to be resolved in favor of returning the matter to state court. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

B. Federal Question Jurisdiction

In its original Notice of Removal, the Defendant claimed that federal-question jurisdiction existed because Count I of the Plaintiff's complaint was either expressly or impliedly based on a violation of NFIA. Count I does not purport to be a federal claim for the violation of NFIA. Nor can it be construed as such a claim, because there is no implied private cause of action for damages for a violation of the NFIA. Till v. Unifirst Federal Savings and Loan, 653 F.2d 152 (5th Cir. 1981).[2] Instead, Count I is an ordinary state law negligence claim that uses the Defendant's failure to comply with the NFIA as a basis for the duty element of negligence. This has an arguable legal basis. Under Florida law, the violation of a federal, state, or local statute may be considered as evidence of negligence, and may even constitute negligence per se, depending on the circumstances. See deJesus v. Seaboard Coast Line Railroad Company, 281 So.2d 198 (Fla. 1973); Eckelbarger v. Frank, 732 So.2d 433 (Fla. 2nd DCA 1999).

Generally, for a district court to have federal question jurisdiction over a case, the case must include at least one federal claim. However, state claims may also

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Till was decided on August 7, 1981.

Case No.: 3:06CV105/RV/MD

confer "arising under" jurisdiction if: (1) the claim involves a substantial and contested issue of federal law; (2) there is a serious federal interest in claiming the advantages of a federal forum; and (3) the claim may be entertained by a federal forum without disturbing any congressionally approved balance of federal and state judicial responsibilities. Grable & Sons Metal Productds v. Darue Engineering & Manufacturing, ___ U.S. ___, 125 S. Ct. 2363, 2368, 162 L. Ed. 2d 257 (2005).

I have recently addressed the NFIA federal subject matter jurisdictional issue in Hulbert v. Wells Fargo Bank, 3:05-CV-265-RV (N.D. Fla. Nov. 10, 2005). In Hulbert, I concluded that allowing federal question jurisdiction over these types of cases would significantly upset the sound division of labor between state and federal courts envisioned by Congress. Id. It is improbable that Congress, having made no provision for a private federal cause of action for violations of NFIA, would "have meant to welcome any state-law tort case implicating federal law 'solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence]… under state law.'" Grable & Sons Metal Products, supra, 125 S. Ct., at 2371 (quoting Merrel Dow Pharmaceuticals v. Thompson, 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650).

Subsequent to my decision in Hulbert, the Tenth Circuit decided Nicodemus v. Union Pacific, 400 F.3d 1227 (10th Cir. 2006). Nicodemus involved a dispute between various Wyoming landowners and the Union Pacific railroad over whether the railroad's easement over the landowner's property extended to the laying of fiber-optic cables. Id., at 1233. Since the railroad's easement was based on numerous federal statutes, the case depended entirely on the proper interpretation of federal law. Id., at 1234-35. After a thorough analysis, the Tenth Circuit concluded that it did have federal jurisdiction over the case. Id., at 1237.

Countrywide contends that Nicodemus should cause me to reconsider my opinion in Hulbert. The two cases are quite different, however. Pivotal to the Tenth Circuit's conclusion in Nicodemus was the fact that it will be a "rare state trespass

and unjust enrichment that so uniquely turns on a critical matter of federal law." Id. In short, the scope and extent of the railroad's easement had to be gleaned from the court's construction and interpretation of the various federal laws. The scope of application was very narrow. Allowing federal jurisdiction over such claims would, therefore, not upset the federal-state balance envisioned by Congress. By contrast, the violation of the duty imposed by federal statutes and regulations is commonly considered negligence per se in state tort proceedings. See W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Torts § 36, p. 221, qn. 9 (collecting cases). Allowing federal question jurisdiction over all state law negligence claims that incorporate a federal duty could potentially flood the federal docket with cases based on a violation of a federal statute, even where Congress has decided that there should be no private right of action under the statute. Compare Grable & Sons Metal Products, supra, 125 S. Ct., at 2368, 162 L. Ed. 2d at 268 (allowing federal jurisdiction over a quiet title action involving federal tax law issues because such cases would be "rare") with Merrell Dow, supra, 478 U.S. at 817, 106 S. Ct., at 3237 (concluding that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation" lacks federal question jurisdiction). Since Nicodemus is consistent with my decision in Hulbert, I conclude that Hulbert was correctly decided and that I do not have federal question jurisdiction over the Plaintiff's claims alleged in this case.

      C.     Diversity Jurisdiction

That is not the end of the jurisdictional inquiry, however. Countrywide filed a supplemental notice on March 25, 2006, asserting jurisdiction on diversity grounds as well. While this supplemental notice of removal was not filed within the ordinary time-limits for removal, Countrywide contends that it is allowable under Title 28, United States Code, Section 1446(b), which provides: "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after

receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . ." According to Countrywide, because Plaintiff's complaint is silent as to the amount of damages being sought, the thirty-day period did not begin to run until it received e-mail confirmation on March 14, 2006, that Callahan was seeking more than $75,000 in damages. Callahan, in opposition to this, argues that the Defendant has known that the amount of damages she was seeking exceeded $75,000 since August 16, 2005, when a "demand" letter was sent to the insurance company, and that this should prevent Countrywide from relying on Section 1446(b).

The facts in this case are similar to those in Chapman v. Powermatic, 969 F. 2d 160 (5th Cir. 1992). Chapman involved a personal injury claim brought by a high school student against Powermatic, Inc. ("Powermatic"), the manufacturer of a wood planter. Prior to brining suit, Chapman's attorney had sent a letter to Powermatic claiming injuries in excess of the required jurisdictional amount. However, while Chapman's complaint revealed that there was complete diversity between the parties, it did not plead a specific amount of damages. When Chapman's answers to interrogatories revealed that he was seeking damages in excess of the jurisdictional amount, Powermatic removed the case to federal court under Section 1446(b). Id., at 161.

On appeal, the Fifth Circuit held that Powermatic's prior knowledge about the amount of damages was irrelevant to the Section 1446(b) analysis. According to the court, placing an actual knowledge limitation on Section 1446(b) "would require courts to expend needlessly their resources trying to determine what the defendant knew at the time it received the initial pleading." Id., at 163. To avoid this uncertainty and inefficiency, the court adopted "a bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place in the initial pleading a specific allegation that damages are in

excess of the federal jurisdictional amount." Id.

The Chapman court's approach to the "other paper" provision of Section 1446(b) is by no means the universal one. Some district courts have held otherwise. See, e.g., Williams v. Safeco Insurance Company of America, 74 F. Supp. 2d 925 (W.D. Mo. 1999) (a defendant's actual knowledge that the Plaintiff's claim exceeds the amount in controversy requirement is sufficient to preclude reliance on the "other paper" provision of Section 1446(b)); Mielke v. Allstate Insurance Company, 472 F. Supp. 851 (E.D. Mich. 1979) (same). However, the rule applied in Chapman seems preferable to an actual knowledge limitation. Nothing in the text of Section 1446(b) explicitly precludes reliance on that provision by a defendant who has prior knowledge a plaintiff is seeking damages in excess of the required jurisdictional amount. Adding an actual knowledge limitation would complicate an otherwise straightforward statutory provision, adding a cloud of uncertainty over removal actions, and requiring courts to engage in the difficult and uncertain task of determining whether a particular communication could have (or should have) provided adequate notice to a defendant of a plaintiff's claimed damages.

It may seem unfair to allow a defendant to hold off removing a case which he knows is removable until he receives formal confirmation in the form of an amended pleading, an answer to an interrogatory, or some "other paper." However, if a plaintiff wants to avoid this possibility, he can simply include in his initial pleading an accurate claim for damages. An underlying purpose of Section 1446(b) was not to protect plaintiffs from delayed removal, but to prevent plaintiffs from defeating removal by initially alleging a claim below the jurisdictional minimum and then amending after the 30-day time limit had run. See, e.g., Strictland Transportation Company v. Navajo Freight Lines, 199 F. Supp. 108 (N.D. Tex. 1961).

Further, the statute's language is clear that if "the case stated" in the complaint does not allege damages in excess of the jurisdictional amount, then the "other paper" provision of Section 1446(b) applies. The statute does not mention any

knowledge gleaned from other sources, and I find no good reason to try to judicially modify the statute. Countrywide's supplemental notice of removal is, therefore, timely.

Title 28, United States Code, Section 1332(a) grants federal jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.[3] To be the citizen of a state within the meaning of Section 1332(a), an individual must be both a citizen of the United States and a domiciliary of that state. Gilbert v. David, 235 U.S. 561, 35 S. Ct. 164, 59 L. Ed. 360 (1915). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974). A change of domicile requires a showing of physical presence in a new location combined with an intention to remain there indefinitely. Id. However, whether a party has such an intent must be determined via objective facts, rather than through a potentially self-serving statement of intent by the party in question. Hendry v. Masonite, 455 F.2d 955, 956 (5th Cir. 1972) ("In determining one's citizenship or domicile statements of intent are entitled to little weight when in conflict with facts.") Factors a court may use to determine domicile include whether the party owns real property in the state, has a state driver's license, is registered to vote in the state, and pays income taxes in the state. McCormick v. Aderholt, 293 F.3d 1254 (11th Cir. 2002).

Callahan is an active duty naval officer, and prior to joining the Navy she resided in California, where she still owns property. Military personnel are presumed to retain their citizenship at the time of enlistment for the course of their military service. See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 257 F. Supp. 717 (S.D. N.Y. 2003); Deckers v. Kenneth W. Rose, 592 F. Supp. 25 (M.D. Fla.

---

[3] Under Section 1332(b), a corporation is deemed to be the citizen both of the state in which it is incorporated, and where it has its principal place of business. Thus, for diversity jurisdiction to exist, it must be shown that Callahan is the citizen of some state other than either New York or California.
Case No.: 3:06CV105/RV/MD

1984). However, this presumption can be rebutted with "clear and unequivocal" evidence that a serviceperson intended to make a different state her true home. In re Ski Train, supra, 257 F. Supp. 2d at 726; Deckers, supra, 592 F. Supp. at 27. Here, the facts strongly indicate an intent on Callahan's part to make Florida her domicile. Callahan owns real property in Florida, has a Florida driver's license, is registered to vote in Florida, and has sworn under oath in public documents that she is a permanent resident of the state of Florida. Based on these undisputed facts, Callahan qualifies as a Florida citizen under Section 1332(a).  Therefore, diversity of citizenship exists in this case.

## II.  CONCLUSION

For the above reasons, the Plaintiff's motion to remand (Doc. 8) is DENIED.

DONE AND ORDERED this 26th day of June, 2006.

*/s/ Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**